IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GILBERT CRUZ, <br><br> *Plaintiff,* <br><br> v. <br><br> DEPUTY ROLANDO DELGADO JR., DEPUTY G. PERKINS, DEPUTY T. CUMMINGS, SERGEANT K. BENOIT, SERGEANT M. STOUFFER, each in their individual capacity, SHERIFF ED GONZALEZ in his official capacity, and HARRIS COUNTY, <br><br> *Defendants.* | **Case No.: 4:16-cv-3568** <br><br> **JURY DEMANDED** <br><br><br> **COMPLAINT for DAMAGES** |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT

SITTING IN THE SOUTHERN DISTRICT OF TEXAS:

### I.    INTRODUCTION

1.     Plaintiff Gilbert Cruz, a disabled veteran, brings these claims arising from an

unjustifiable arrest and imprisonment for approximately seventy (70) days by Defendants

Rolando Delgado Jr., G. Perkins, T. Cummings, K. Benoit, M. Stouffer, Sheriff Ed Gonzales,

and Harris County, Texas.

2.     Mr. Cruz and a guest were in his home and Mr. Cruz demanded that the guest leave. The

guest instead called the police and alleged that Mr. Cruz hit her and threw her across a coffee

table. Dpty. Delgado responded to the call. Upon arrival, Dpty. Delgado saw that the home was

in order and the guest had no apparent injuries. Dpty. Delgado ordered Mr. Cruz out of the home

so that he could interview the guest despite Mr. Cruz being the home owner. Mr. Cruz verbally refused to be ousted from his own home and requested that the guest be interviewed outside his home. Rather than honor Mr. Cruz's request, Dpty. Delgado decided to misappropriate Mr. Cruz's home as a police interrogation room. Dpty. Delgado then retaliated against Mr. Cruz by grabbing, hitting, and arresting him without any legal authority. Dpty. Delgado's beating of Mr. Cruz left him bloodied and in need of immediate medical care.

3.      Harris County Deputies G. Perkins, T. Cummings, and Harris County Sergeants K. Benoit, M. Stouffer, each arrived at the scene of the incident, investigated and were aware of the facts leading up to the beating and arrest of Mr. Cruz, but failed to prevent or stop Dpty. Delgado from further violating Mr. Cruz's civil rights.

4.      Harris County through its sheriff and supervisors has created, implemented, maintained, or ratified unconstitutional policies, procedures, practices, or customs that amount to *inter alia* a failure to train and/or supervise their deputies to prevent civil rights violations such as First Amendment retaliation, Fourth Amendment excessive force and false arrest, and Ninth Amendment misappropriation by police of a private person's home.

5.      Harris County held Mr. Cruz in jail for more than two months without any legal basis. The arrest and imprisonment of Mr. Cruz was transparently unconstitutional resulting in a dismissal of all charges and thereafter a rapid expunction.

6.      Mr. Cruz suffered injuries to his person and liberty, along with emotional distress and mental anguish, as a result of Dpty. Delgado's actions. Further, Mr. Cruz's lengthy incarceration caused him to lose his employment and his car was repossessed.

7.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the United States Constitution, Texas statutes, and common law.

## II.    JURISDICTION AND VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343.

9.      Supplemental jurisdiction of this Court to hear claims arising under state law is invoked

pursuant to 28 U.S.C. § 1367.

10.     Venue in this Court is appropriate under 28 U.S.C. § 1391(b).

11.     All conditions precedent have been performed or have occurred.

## III.    JURY DEMAND

12.     Plaintiff respectfully demands a trial by jury.

## IV.    PARTIES

13.     Plaintiff, Gilbert Cruz ("CRUZ"), is a competent adult and resident of the County of

Harris, Texas.

14.     Defendant, Rolando Delgado Jr. (Badge #1656) ("DELGADO"), is a Sheriff's Deputy for

Harris County, Texas during all relevant times set out in this complaint. DELGADO is an adult

and resident of Harris County.

15.     Defendant G. Perkins ("PERKINS"), first name unknown, is a Sheriff's Deputy for

Harris County, Texas during all relevant times set out in this complaint. PERKINS is an adult

and resident of Harris County.

16.     Defendant T. Cummings ("CUMMINGS"), first name unknown, is a Sheriff's Deputy for

Harris County, Texas during all relevant times set out in this complaint. CUMMINGS is an adult

and resident of Harris County.

17.     Defendant K. Benoit ("BENOIT"), first name unknown, is a Sheriff's Sergeant for Harris

County, Texas during all relevant times set out in this complaint. BENOIT is an adult and

resident of Harris County.

18.     Defendant M. Stouffer ("STOUFFER"), first name unknown, is a Sheriff's Sergeant for Harris County, Texas during all relevant times set out in this complaint. STOUFFER is an adult and resident of Harris County.

19.     DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER may be served with process at 1200 Baker Street, Houston, TX 77002.

20.     Plaintiff is informed and believes, and on that basis alleges that at all times relevant to this complaint that DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER acted as employees of Harris County, Texas, as investigative and law enforcement officials who acted in course and scope of their duties, albeit having acted *ultra vires* to the authority given to them by the State of Texas and their employer. Thereby these named Defendants are sued only in their individual capacity.

21.     Defendant, Sheriff Ed Gonzales ("SHERIFF"), is the sheriff-elect for Harris County, Texas. Ed Gonzales is or will be the final policymaker for all rules and policies of the Harris County Sheriff's Department and is therefore the appropriate party as the official policymaker for suit. SHERIFF is sued only in his official capacity.

22.     Defendant Harris COUNTY ("COUNTY") is a county, duly organized and existing under the laws of the State of Texas. Defendant COUNTY operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the Harris County Sheriff's Office and the Harris County Jail, and their agents and employees. It may be served with process by serving its County Judge, the Honorable Ed Emmett, at 1001 Preston, Suite 911, Houston, TX 77002.

23.     Herein, Defendant Ed Gonzalez and Defendant Harris County will be individually and collectively referred to as "COUNTY."

24.     Herein, DELGADO, PERKINS, CUMMINGS, BENOIT, STOUFFER, and COUNTY will be individually and collectively referred to as "Defendant" and/or "Defendants."

25.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this complaint Defendants were acting under color of state law.

26.     Plaintiff is informed and believes, and on that basis alleges, that each Defendant is responsible in some manner for the violations alleged herein, and that Plaintiff's injuries were proximately caused by the conduct of such Defendant.

## V.     FACTS

27.     On or about May 11, 2016, CRUZ and his friend Jasamine Lata Sheppard ("SHEPPARD") were at CRUZ's home in COUNTY's jurisdiction.

28.     CRUZ

    a.  had allowed SHEPPARD to stay at his home for a few days while she sought permanent residence elsewhere.

    b.  and SHEPPARD had a heated argument.

    c.  called COUNTY and requested that deputies intervene.

29.     Unknown deputies arrived, removed SHEPPARD from CRUZ's home, spoke with SHEPPARD, and left without further incident.

30.     On May 13, 2016, CRUZ and SHEPPARD were again at CRUZ's home.

31.     CRUZ demanded SHEPPARD to leave his home.

32.     SHEPPARD

    a.  refused to leave.

    b.  told CRUZ that she knew how to manipulate Texas landlord-tenant law to ensure that CRUZ could not force SHEPPARD to leave.

    c.  called 9-1-1 and was connected to COUNTY's Sheriff's Department.

    d.  falsely reported to the 9-1-1 dispatcher that CRUZ had struck her and thrown her across a coffee table.

33.   DELGADO arrived at CRUZ's apartment and knocked on its door.

34.   CRUZ opened the door.

35.   DELGADO

    a.  found the apartment clean and in order.

    b.  observed no marks on SHEPPARD.

    c.  observed that a chess set on the coffee table was undisturbed.

    d.  told CRUZ that he wanted to interview SHEPPARD.

    e.  had no arrest warrant.

    f.  ordered CRUZ to leave his apartment.

36.   CRUZ

    a.  refused to leave his apartment.

    b.  told DELGADO that he did not trust SHEPPARD in his apartment.

    c.  requested instead that DELGADO remove SHEPPARD from his apartment.

    d.  did not touch DELGADO.

    e.  did not physically obstruct DELGADO.

    f.  did not otherwise interfere with DELGADO.

37.   DELGADO

    a.  grabbed CRUZ by the shirt at the shoulder.

    b.   threw CRUZ out of his apartment.

    c.  caused himself and CRUZ to fall to the ground.

    d.   caused cuts and bruises to CRUZ's left arm due to the fall.

    e.   used his closed left fist to strike CRUZ on his face.

    f.   caused injury to CRUZ's face and caused him to bleed.

    g.   struck CRUZ with such force to temporarily knock CRUZ unconscious.

    h.   handcuffed CRUZ.

    i.   forced CRUZ to his police vehicle.

    j.   summoned medical personnel.

38.   Medical personnel arrived and treated CRUZ's cut face.

39.   DELGADO interviewed SHEPPARD who stated that she was a friend of CRUZ.

40.   CRUZ's neighbors who witnessed the altercation informed DELGADO that CRUZ was a disabled veteran who suffered from post-traumatic stress disorder.

**ARRIVAL OF OTHER LAW ENFORCEMENT OFFICERS**

41.   PERKINS, CUMMINGS, BENOIT, and STOUFFER each arrived at the scene.

42.   PERKINS took pictures of CRUZ's injuries.

43.   DELGADO explained to PERKINS, CUMMINGS, BENOIT, and STOUFFER that CRUZ was beaten and arrested for refusing to leave his apartment.

44.   PERKINS and CUMMINGS

    a.   interviewed SHEPPARD.

    b.   were told by SHEPPARD that CRUZ had thrown her to the ground and struck her several times with a closed fist.

    c.   observed no visible marks or other injuries on SHEPPARD.

45.   PERKINS, CUMMINGS, BENOIT and STOUFFER each took no action to release CRUZ from police custody.

46.     CRUZ asked DELGADO why he was being detained.

47.     DELGADO

    a.  refused to answer.

    b.  told the Harris County assistant district attorney that CRUZ yelled and waved his

        arms that interrupted, disrupted, and/or impeded with DELGADO's ability to

        interview SHEPPARD.

    c.  charged CRUZ with Interference with a Public Official. Texas P.C. § 38.15.

        (*State of Texas v. Gilbert F. Cruz*, Cause No. 2091034.)

**VIOLATION OF CRUZ'S RIGHTS AT HARRIS COUNTY JAIL**

48.     CRUZ was taken to Harris County Inmate Processing Center and then held by COUNTY

in its county jail facility.

49.     On May 14, 2016, at or about 6:00 a.m., CRUZ was initially required to pay two

thousand five hundred dollars ($2,500) bail to be released from jail.

50.     On the same date, at or about 4:00 p.m., bail was increased to three thousand five

hundred dollars ($3,500) at CRUZ's Article 15.17 hearing.

51.     CRUZ

    a.  was not present at his Article 15.17 hearing.

    b.  was unable to pay the required bail.

    c.  was unable to pay a bondsman ten percent of the required bail.

    d.  was not informed by COUNTY or its personnel why he was being held until the day

        after his arrest: May 14, 2016.

    e.  was threatened with violence by other inmates and suffered insomnia as a result.

**INADEQUATE MEDICAL CARE AT HARRIS COUNTY JAIL**

52.    CRUZ

    a.   was kept in a room with other people arrested by COUNTY personnel.

    b.   was exposed to shingles by people that COUNTY kept in the room with CRUZ.

    c.   was held in quarantine by COUNTY increasing his exposure to shingles and increasing his risk of contracting shingles.

    d.   was denied access outside quarantine such as to go to court, recreation room, library, or chapel.

    e.   informed Jail Personnel that he had previously suffered from a stroke.

    f.   informed Jail Personnel that he had been diagnosed with high blood pressure, high cholesterol, anxiety, and post-traumatic stress disorder before his arrest.

53.    COUNTY

    a.   kept CRUZ in quarantine that deprived CRUZ of suitable exercise for his medical condition.

    b.   provided CRUZ a diet that exacerbated his high blood pressure and high cholesterol, and put him at higher risk of another stroke, namely foods high in cholesterol such as milk and hot dogs, and high in saturated fat such as dairy butter and peanut butter.

    c.   provided CRUZ no suitable food for his medical condition such as green leafy vegetables, adequate servings of fruit, beans prepared to be free of cholesterol and saturated fat, or oatmeal.

**CHARGES DISMISSED AGAINST CRUZ**

54.    On July 22, 2016, the State of Texas moved to dismiss the case against CRUZ stating, "No information/evidence as to how [CRUZ] interfered with public duties of the officer."

55.    CRUZ

   a.  was released from COUNTY custody the same day.

   b.  owned a 2004 Infiniti QX56-V8 car.

   c.  had his car repossessed by Santander Consumer USA due to his failure to make

       payments while he was in jail. Santander Consumer USA sold the car at auction for

       $10,000, and billed him for $15,729.67 for the net balance owed post-sale.

   d.  was hired by U.S. Census Bureau as a contractor before his arrest to be paid an hourly

       rate of $20.75 for an indefinite amount of time.

   e.  had his contract terminated on June 17, 2016 by the U.S. Census Bureau due to him

       being in jail.

   f.  was granted an expunction by the State of Texas on or about Sept. 26, 2016.

       (*See* Case No. 2016-53790)


## VI.    CAUSES OF ACTION

### #1 — VIOLATION OF FREEDOM OF SPEECH
### (In violation of First Amendment / 42 U.S.C. § 1983)
### Asserted against DELGADO

56.    CRUZ was engaged in constitutionally protected free speech immediately before and at

the time when he was arrested by DELGADO by verbally refusing to comply with DELGADO's

unlawful order.

57.    DELGADO retaliated against CRUZ by injuring, arresting, and causing criminal charges

to be brought against CRUZ.

58.    DELGADO's retaliation and arrest interrupted and stopped CRUZ's liberty for

approximately 70 days. CRUZ incurred other injuries including but not limited to physical

injuries to his face and arm, emotional distress, mental anguish, and economic injuries such as

loss of employment and repossession of his car. Each of these injuries were foreseeable results of the types of constitutional and tort violations that CRUZ suffered such as false arrest and imprisonment, and excessive force.

### #2 — MISAPPROPRIATION OF ANOTHER's HOME
### (In violation of Ninth Amendment / 42 U.S.C. § 1983)
### Asserted against DELGADO

59.    CRUZ was in lawful possession of his apartment, used it as his home, and was present inside the walls of his home.

60.    DELGADO knew or should have known that the apartment described herein was CRUZ's home.

61.    DELGADO, without lawful authority, misappropriated CRUZ's home to use it as an *ad hoc* police interrogation room. In so doing, DELGADO seized and removed CRUZ from his home without legal authority. DELGADO then used CRUZ's home without CRUZ's consent or legal authority to interview SHEPPARD.

62.    As a direct and proximate result of DELGADO's actions, CRUZ suffered injuries to his privacy, liberty, and natural rights to remain in actual possession of his home.

### #3 — UNREASONABLE SEIZURE
### (In violation of Fourth Amendment / 42 U.S.C. § 1983)
### Asserted against DELGADO

63.    CRUZ did not commit any crime including what he was charged with: Interference with a Public Official. Tex. P.C. § 38.15.

64.    DELGADO detained, arrested, and seized CRUZ without probable cause and without a warrant, and unlawfully caused CRUZ to remain in COUNTY custody for 70 days.

### #4 — EXCESSIVE FORCE
### (In violation of Fourth Amendment / 42 U.S.C. § 1983)
### Asserted against DELGADO

65.    CRUZ suffered significant and severe physical injuries as a result of DELGADO

grabbing CRUZ's shirt and shoulder, pulling CRUZ to the ground and falling on top of him, and striking CRUZ in his face with a closed fist.

66.     The force DELGADO used against CRUZ caused injury and scarring to his face and left arm, caused bleeding from his face, and temporarily knocked CRUZ unconscious.

67.     At the time when DELGADO attacked CRUZ, CRUZ was standing passively in his own home. CRUZ verbally refused to obey DELGADO's unlawful order for CRUZ to leave his home. CRUZ did not pose any threat or danger to DELGADO. CRUZ had no weapons visible on his person or concealed.

68.     CRUZ's injuries resulted directly and only from DELGADO's use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

### #5 — MALICIOUS PROSECUTION
### (In violation of Fourth Amendment / 42 U.S.C. § 1983)
### Asserted against DELGADO

69.     CRUZ was prosecuted by the State of Texas for Interference with a Public Official.

70.     DELGADO instituted said criminal action against CRUZ.

71.     The criminal action was dropped by the state and CRUZ secured an expunction, therefore the proceeding terminated in CRUZ's favor.

72.     CRUZ did not interfere with DELGADO and the criminal charge was expunged, therefore CRUZ was conclusively innocent.

73.     DELGADO did not have probable cause to arrest CRUZ as any reasonable person would not believe that CRUZ was guilty of any crime.

74.     DELGADO arrested CRUZ to retaliate against CRUZ refusing to obey an unlawful order.

75.     DELGADO violated CRUZ's First, Fourth, and Ninth Amendment rights by throwing him out of his home, arresting him, and causing criminal charges to be brought against him.

76.     As a result of the criminal action, CRUZ suffered emotional injury, pecuniary damages, and loss of time, liberty, and enjoyment of life to defend against said action.

### #6 — FAILURE TO PREVENT CIVIL RIGHTS VIOLATIONS
### (In violation of Fourteenth Amendment / 42 U.S.C. § 1983)
### Asserted against PERKINS, CUMMINGS, BENOIT and STOUFFER

77.     PERKINS, CUMMINGS, BENOIT and STOUFFER, as bystanders

    a.  breached duties imposed on them under federal and state law to protect CRUZ from civil rights violations caused by other law enforcement officers that they could have prevented or stopped.

    b.  had a duty to protect the civil rights of CRUZ.

    c.  breached their duty by allowing DELGADO to falsely arrest CRUZ, fabricate evidence and/or manufacture probable cause against CRUZ, and allow CRUZ to remain in custody for 70 days while knowing that CRUZ did not commit any crime.

    d.  had a reasonable opportunity to prevent or stop said violations.

78.     BENOIT and STOUFFER, as supervisors,

    a.  directly participated in these civil rights violations,

    b.  knew that their subordinates participated in these violations,

    c.  failed to prevent or stop the violations.

79.     Had PERKINS, CUMMINGS, BENOIT or STOUFFER intervened, CRUZ would not have been arrested. Their actions were the direct and proximate cause of CRUZ's injuries because they each failed to prevent or stop DELGADO from arresting CRUZ.

80.     CRUZ suffered physical, emotional, and economic injuries and continues to suffer emotional and economic injuries because PERKINS, CUMMINGS, BENOIT and STOUFFER's failure to prevent DELGADO from arresting him.

### #7 — NEGLIGENT TRAINING and NEGLIGENT SUPERVISION
### (Each in violation of *Monell v. Dept of Soc. Servs.*, 436 U.S. 658 (1978) / 42 U.S.C. § 1983)
### Asserted against COUNTY

81.    The right to remain in one's home absent a valid arrest warrant is grounded in the Fourth, Ninth, and Fourteenth Amendments of the Unites States Constitution.

82.    Similarly, civilians in Texas have the clearly established right under Article I, § 9 of the Texas Constitution to "be secure in their persons, houses, […], from all unreasonable seizures," and Article I, § 19 of the Texas Constitution not to "be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

83.    Federal and Texas laws protect civilians who are in their homes and have not committed any crime, yet law enforcement officers in Harris County routinely threaten to and actually arrest or punish such civilians.

84.    COUNTY's deputies have engaged in a pattern or practice of violating the civil rights of civilians who verbally refuse unlawful orders such as by arresting them without probable cause and charging them with Interference with a Public Official when the only alleged interference was verbally refusing to obey lawful or unlawful orders.

85.    This case involves a violation of these civil rights with the clearly unlawful arrest of CRUZ starting when he refused to obey DELGADO's unlawful order.

86.    COUNTY, and the persons employed within the chain of command of its Sheriff's Department, were involved directly or indirectly in the violation of CRUZ's civil rights.

87.    All of the violations alleged herein were undertaken pursuant to the direction and/or supervision of SHERIFF and/or his predecessor, Sheriff Ron Hickman, and unknown persons within either sheriff's chain of command. These unknown defendants were responsible for all training and supervision of the individual members of COUNTY's Sheriff's Department whose

acts and/or failures to act resulted in the violation of CRUZ's civil rights.

88.    SHERIFF and persons employed within the chain of command with COUNTY's Sheriff's Department are responsible for establishing the Departmental policies, rules, regulations, ordinances, and procedures which SHERIFF and every employee, agent, and contractor of COUNTY's Sheriff's Department must follow.

89.    Upon information and belief, at all times relevant to this complaint, there was no policy, rule, regulation, ordinance or procedure addressing how COUNTY's Sheriff's Deputies should proceed when a deputy wants to privately interview a person in the home of another and the home owner refuses to leave the home.

90.    The lack of established policies, rules, regulations, and procedures caused the civil rights violations under the U.S. and Texas Constitutions and common law, and therefore were the driving force and cause of the damages suffered by CRUZ.

91.    COUNTY was deliberately indifferent to the substantial risk that CRUZ and other civilians would suffer the type of civil rights injury that CRUZ suffered because COUNTY failed to establish and maintain a suitable policy regarding when a deputy can force a home owner who has committed no crime out of their home.

92.    On information and belief, COUNTY knew, should have known, or acquiesced to the substantial risk that the lack of policy, rule, regulation, or procedure would cause the type of civil rights violation suffered by CRUZ and others similarly situated.

93.    COUNTY failed to train and supervise their employees regarding the enforcement of established rules, regulations, and procedures consistent with the U.S. and Texas Constitutions regarding protections of home owners while in their own homes, and prohibiting any retaliation from unlawful orders to leave.

94.     It is objectively foreseeable that without adequate training and/or supervision, DELGADO would abuse and/or retaliate against civilians in CRUZ's situation.

95.     It is further objectively foreseeable that DELGADO would abuse any civilian whom DELGADO perceived as defying an unlawful order if DELGADO was not trained or supervised to discern which of his orders were lawful or unlawful.

96.     COUNTY knew, should have known, were deliberately indifferent to, or acquiesced to the substantial risk that the failure to train and/or failure to supervise law enforcement officers about civilians' civil rights would cause this type of civil rights violation, and specifically that DELGADO would again abuse, attack, injure, and manufacture probable cause against civilians who defy DELGADO's unlawful orders.

97.     In addition, COUNTY failed to discipline, reprimand, or correct DELGADO for his violation of CRUZ's civil rights. This indicates tacit approval for DELGADO and other COUNTY employees to violate the rights of other civilians similarly situated, which is itself another unconstitutional policy, rule, regulation, or procedure of COUNTY's.

98.     COUNTY is liable for violations of CRUZ's civil rights as described herein as it willfully, wantonly, or recklessly failed to properly train and supervise the individual employees whose conduct resulted in the violation of CRUZ's civil rights.

99.     Said absent or deficient training and supervision was a direct and proximate cause of the civil rights violations and damages suffered by CRUZ under the U.S. and Texas Constitutions and common law.

### #8 — NEGLIGENT TRAINING and NEGLIGENT SUPERVISION
**(Each in violation of *Monell v. Dept of Soc. Servs.*, 436 U.S. 658 (1978) / 42 U.S.C. § 1983)**
**Asserted against COUNTY**

100.    Every law enforcement officer has a duty to prevent or stop others from violating a civilian's civil rights.

101.    Law enforcement officers are in the best position to prevent or stop a civilian's civil rights from being violated by other law enforcement officers yet COUNTY's Sheriff's deputies have engaged in a pattern or practice of failing to prevent or stop civil rights violations that they witness whether they are also participants or simply bystander-witnesses in said violations.

102.    This case involves a violation of these civil rights with the clearly unlawful arrest of CRUZ starting when he refused to obey DELGADO's unlawful order.

103.    COUNTY, and the persons employed within the chain of command with COUNTY's Sheriff's Department were involved directly or indirectly in the violation of CRUZ's civil rights.

104.    All of the violations alleged herein were undertaken pursuant to the direction and/or supervision of SHERIFF and/or his predecessor, Sheriff Ron Hickman, and unknown persons within either sheriff's chain of command. These unknown defendants were responsible for all training and supervision of the individual members of COUNTY's Sheriff's Department whose acts and/or failures to act resulted in the violation of CRUZ's civil rights.

105.    SHERIFF and persons employed within the chain of command with COUNTY's Sheriff's Department are responsible for establishing the Departmental policies, rules, regulations, ordinances, and procedures which SHERIFF and every employee, agent, and contractor of COUNTY's Sheriff's Department must follow.

106.    Upon information and belief, at all times relevant to this complaint, there was no policy, rule, regulation, ordinance or procedure addressing how COUNTY's Sheriff's deputies should proceed when (1) they witness another law enforcement officer violating the rights of a civilian, and (2) they are in a position to prevent or stop said violations.

107.    The lack of established policies, rules, regulations, and procedures caused the civil rights violations under the U.S. and Texas Constitutions and common law, and therefore were the

driving force and cause of the damages suffered by CRUZ. COUNTY was deliberately indifferent or acquiesced to the substantial risk that CRUZ and other civilians would suffer the type of civil rights injury that CRUZ suffered because COUNTY failed to establish and maintain a suitable policy regarding when its deputies witnessed DELGADO violating CRUZ's civil rights as described herein.

108.    On information and belief, COUNTY knew, should have known, or acquiesced to the substantial risk that the lack of policy, rule, regulation, or procedure would cause the type of civil rights violation suffered by CRUZ and others similarly situated.

109.    COUNTY failed to train and supervise their employees regarding the enforcement of established rules, regulations, and procedures consistent with the U.S. and Texas Constitutions regarding how its deputies can prevent or stop other law enforcement officers from violating the civil rights of civilians.

110.    It is objectively foreseeable that without adequate training and/or supervision, PERKINS, CUMMINGS, BENOIT and STOUFFER would fail to prevent or stop DELGADO from violating CRUZ's civil rights.

111.    In fact, PERKINS, CUMMINGS, BENOIT and STOUFFER each decided to uphold their fraternity with DELGADO as another law enforcement officer rather than defend the rights of CRUZ because COUNTY failed to train and supervise them.

112.    COUNTY knew, should have known, were deliberately indifferent to, or acquiesced to the substantial risk that the failure to train and/or failure to supervise law enforcement officers about their duty to prevent or stop the violations of a civilian's civil rights even when a fellow law enforcement officer is the person violating those rights.

113.    In addition, COUNTY failed to discipline, reprimand, or correct the conduct of

PERKINS, CUMMINGS, BENOIT and STOUFFER for failing to prevent or stop the violations of CRUZ's civil rights.

114.   COUNTY is liable for violations of CRUZ's civil rights as it willfully, wantonly, or recklessly failed to properly train and supervise the individual employees whose conduct resulted in the violation of CRUZ's civil rights.

115.   Said absent or deficient training and supervision was a direct and proximate cause of the civil rights violations and damages suffered by CRUZ under the U.S. and Texas Constitutions and common law.

### #9 — ASSAULT and BATTERY
### (In violation of Common Law)
### Asserted against DELGADO

116.   CRUZ suffered significant and severe physical injuries as a result of DELGADO intentionally grabbing CRUZ's shirt and shoulder, pulling CRUZ to the ground and falling on top of him causing injuries to his left arm, and striking CRUZ in his face with a closed fist causing a cut and bleeding, and temporarily knocking CRUZ unconscious.

117.   CRUZ suffered the aforementioned physical injuries as a result of DELGADO's assault.

### #10 — FALSE ARREST
### (In violation of Common Law)
### Asserted against DELGADO

118.   DELGADO willfully detained CRUZ without CRUZ's consent, and without probable cause or other lawful authority.

### #11 — MALICIOUS PROSECUTION
### (In violation of Common Law)
### Asserted against DELGADO

119.   CRUZ was prosecuted by the State of Texas for Interference with a Public Official.

120.   DELGADO instituted said criminal action against CRUZ.

121.   The criminal action was dropped by the state and CRUZ secured an expunction, therefore

the proceeding terminated in CRUZ's favor.

122.    CRUZ did not interfere with DELGADO and the criminal charge was expunged,

therefore CRUZ was conclusively innocent.

123.    DELGADO did not have probable cause to arrest CRUZ as any reasonable person would

not believe that CRUZ was guilty of any crime.

124.    DELGADO arrested CRUZ to retaliate against CRUZ refusing to obey an unlawful

order.

125.    As a result of the criminal action, CRUZ suffered emotional injury, pecuniary damages,

and loss of time, liberty, and enjoyment of life to defend against said action.

### #12 — NEGLIGENCE and NEGLIGENCE PER SE
### (In violation of Common Law)
### Asserted against DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER

126.    CRUZ was arrested by DELGADO for his refusal to obey an unlawful order. Tex. P.C. §

38.15(d) sets the standard of care that affirmatively excludes a civilian from probable cause of

Interference with a Public Official when the alleged interference is speech only.

127.    Subsection (d) was designed to prevent civilians from being arrested for their

constitutionally protected free speech, such as generally to verbally disagree with law

enforcement officers and specifically to verbally defy their unlawful orders.

128.    PERKINS, CUMMINGS, BENOIT, and STOUFFER each were informed of the basis of

CRUZ being arrested by DELGADO, and did not prevent or stop CRUZ's arrest.

129.    DELGADO's arrest of CRUZ and PERKINS, CUMMINGS, BENOIT, and

STOUFFER's failure to prevent or stop the arrest of CRUZ resulted in damages including

CRUZ's loss of employment and repossession of his car.

## VII.    QUALIFIED IMMUNITY

130.    Qualified immunity shields a law enforcement officer from liability for violating a person's rights but who is nonetheless engaged in objectively good faith conduct. The wrongful investigation, prosecution, conviction, incarceration of a plaintiff, or the fabrication of evidence, or manufactured probable cause denies a law enforcement officer qualified immunity. *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999).

131.    "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

132.    Defendants are not entitled to qualified immunity because they knowingly arrested CRUZ and beat him, or allowed him to be arrested, in violation of statutory authority and in violation of CRUZ's clearly established rights not to be arrested without probable cause or as retaliation for defying an unlawful police order.

133.    No reasonable officer would ever believe that Defendants' conduct was justifiable under the U.S. Constitution. Instead, all reasonable officers would know that such conduct was plainly incompetent or a knowing violation of the law.

## VIII.    DAMAGES

134.    CRUZ suffered loss of liberty, mental anguish, physical and emotional injuries, pain and suffering, lost income, lost business potential, embarrassment, humiliation, shame, indignity, damages to his reputation, loss of property, tortious interference with his property, and special damages he incurred or will incur, including but not limited to past, present and future lost wages, legal fees, and other legal expenses.

135.    DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER are liable for punitive

damages as they acted maliciously, with deliberate indifference, or failed to uphold their duty to protect CRUZ's constitutional rights.

136.    DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER used the power and authority conferred upon them by COUNTY as law enforcement officers to arrest, assault and batter, and violate the civil rights of CRUZ. It is predictable and foreseeable, given COUNTY's negligent supervision of DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER that someone in DELGADO's position would abuse the power and authority COUNTY conferred upon him by engaging in such conduct, and that PERKINS, CUMMINGS, BENOIT, and STOUFFER would fail to prevent or stop said abuse. As such, DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER's conduct is incident to their agency with COUNTY, so as to be fairly attributable to COUNTY.

## IX.    REQUEST FOR RELIEF

137.    In light of the foregoing, the CRUZ requests judgment against Defendants, jointly and severally, as follows:

    a.  Compensatory damages from the Defendants;

    b.  Punitive damages from DELGADO, PERKINS, CUMMINGS, BENOIT, and STOUFFER;

    c.  *Respondeat Superior* liability against COUNTY pursuant to state law;

    d.  Pre-judgment and post-judgment interest;

    e.  Reasonable costs, expenses, and attorney's fees;

    f.  All relief to which the CRUZ is entitled; and

    g.  Any other relief that the Court deems just and proper.

Respectfully submitted,

/s/ Jerold D. Friedman
Jerold D. Friedman
**Attorney for Plaintiff**
Cal. SBN 290434
Fed. ID 2117436
jerry@activistlaw.com

LAW OFFICE OF JEROLD D. FRIEDMAN
17515 Spring-Cypress Rd., Suite C-360
Cypress, TX 77429
(281) 810-8812, fax (281) 667-3506