IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GILBERT CRUZ**<br>　　*Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:16-CV-3568 |
| **DEPUTY ROLANDO DELGADO JR.,**<br>　　*Defendants*. | § § § § § | |

### DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF ON THE QUESTION OF QUALIFIED IMMUNITY

Defendant Harris County Sheriff's Office Deputy Rolando Delgado ("Deputy Delgado") in his Individual Capacity ("Defendant") now files his Memorandum of Law in Response to Plaintiff's Trial BriefDefendant would respectfully show this Court as follows:

### NATURE AND STAGE OF THE PROCEEDING

1. This is a civil rights case brought by Plaintiff Gilbert Cruz ("Plaintiff" or "Mr. Cruz"), who was arrested the evening of May 13, 2016 after a woman inside of his apartment called 911 and claimed that Mr. Cruz was assaulting her. Deputy Delgado was dispatched to the call and when he arrived at the building and climbed the stairs to the third floor to Mr. Cruz's apartment he could hear, from outside the door of the Plaintiff's apartment, a male and female screaming at each other. When Deputy Delgado knocked on the door of the apartment and announced that he was a Harris County Sheriff's Deputy, the Plaintiff answered and allowed him entry inside the apartment.

2. Upon entering the apartment Deputy Delgado witnessed Mr. Cruz and a female in the apartment screaming at each other. Deputy Delgado asked Mr. Cruz to explain the cause of the altercation, and Mr. Cruz responded to Deputy Delgado: "get that bitch out of my apartment".

When Deputy Delgado asked Mr. Cruz to calm down and tell his side of the story, Mr. Cruz responded with: "I will tell you when you get that bitch out of my apartment". Mr. Cruz remained agitated and excited from the moment of Deputy Delgado's initial encounter with him. Mr. Cruz, additionally, waved his arms in an aggressive manner shortly after Deputy Delgado entered the apartment, while continuing to make statements to Deputy Delgado such as: "My taxes pay your salary, do your job and get that bitch out".

3. Based on Mr. Cruz's agitated demeanor, Deputy Delgado concluded that he should first try to speak to the 911 caller, Jasamine Lata Sheppard, in order to gather information to determine what had happened. However, when Deputy Cruz attempted to speak to Ms. Sheppard about the reason for the altercation, the Deputy could not communicate with her because Mr. Cruz persistently continued to scream at her. Deputy Delgado then asked Mr. Cruz to step outside of the apartment while he spoke to Ms. Sheppard. Mr. Cruz refused to comply with the Deputy's effort to diffuse the situation and, instead he continued to scream and wave his arms in an aggressive manner.

4. Since Deputy Delgado was the only deputy on the scene, and Mr. Cruz was behaving in an uncooperative and threatening manner, Deputy Delgado advised Mr. Cruz that he would have to detain him pending his investigation into the circumstances surrounding the complaint if he did not calm down. However, Mr. Cruz became more irate in response to the directives from Deputy Delgado and he refused to calm down or in any way comply with the instructions from Deputy Delgado (by stepping outside of the apartment). Deputy Delgado then ordered Mr. Cruz to place his hands behind his back. Mr. Cruz refused. Mr. Cruz stood inside the doorway of the apartment with his hands across the door and stated that he was not going to exit the apartment and for Deputy Delgado not to touch him.

5. Deputy Delgado then escalated his efforts to control the situation with Mr. Cruz by grabbing one of Mr. Cruz's hands and attempting to force it behind his back so Cruz could be placed in handcuffs. Mr. Cruz then pulled away from Deputy Delgado with his arms flailing and a struggle between Mr. Cruz and Deputy Delgado followed. Deputy Delgado attempted to get behind Mr. Cruz at the doorway and Mr. Cruz continued to pull away protesting to Delgado not to touch him. A struggle ensued as Mr. Cruz continued to resist Delgado's efforts to try to restrain him from behind. At a point, during the struggle, when Mr. Cruz attempted to turn around, both Cruz and Delgado fell to the ground at the doorway of Cruz' apartment.

6. While on the ground Deputy Delgado again attempted to restrain Mr. Cruz, but (again) Cruz continued to pull his arm away. When Delgado stood up and once more ordered Cruz to comply and saw that, instead, Cruz was attempting to stand up, Delgado struck Cruz one time with his left fist closed, on the right side of Cruz's face in order to get control of the scene. The strike by Delgado stunned Cruz which allowed Delgado the opportunity to restrain Mr. Cruz by placing the handcuffs on him. It is undisputed that once Plaintiff was restrained and handcuffed, no further force of any kind was used against him.

7. Plaintiff alleges that Deputy Delgado used excessive force against him in violation of the Fourth Amendment after Deputy Delgado instructed the Plaintiff to step outside of his apartment to allow him to interview the complainant. Plaintiff seeks damages, pre- and post-judgment interest, and attorneys' fees, as well as punitive damages. See Doc. No. 20, page 29.

8. Defendant denies that any constitutional violation occurred, or that he is liable to Plaintiff in any amount, under any theory. Defendant asserts that his use of force was reasonable given the totality of the circumstances. At all relevant times hereto, Defendant was within the scope of his authority as a peace officer, he was performing a discretionary function, and was

acting in good faith. Defendant is therefore entitled to qualified immunity on Plaintiff's claims against him and is entitled to present that defense to the jury since the issue was not decided prior to trial.

9. Docket call in this case is set for September 6, 2019.

**ARGUMENT AND AUTHORITIES**

A. **SECTION 1983 GENERALLY**

10. To prevail on his Section 1983 claim, Plaintiff must prove that Defendant, acting under color of law, deprived him of a right secured by the Constitution or laws of the United States on January 7, 2017. See Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359 (1997); Daniels v. Williams, 474 U.S. 327, 330, 106 S. Ct. 662, 664 (1986); Augustine v. Doe, 740 F.2d 322, 324-25 (5th Cir. 1984). Plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); Fee v. Herndon, 900 F.2d 804, 807 (5th Cir.), cert. denied, 498 U.S. 908, 111 S. Ct. 279 (1990); Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986); Angel v. City of Fairfield, Tex., 793 F.2d 737, 739 (5th Cir. 1986); Elliott v. Perez, 751 F.2d 1472, 1482 (5th Cir. 1985).

11. Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or was due to deliberate indifference, and was not the result of mere negligence. See Farmer v. Brennan, 511 U.S. 825, 828-29, 114 S. Ct. 1970, 1974-75 (1994); Davidson v. Cannon, 474 U.S. 344, 348, 106 S. Ct. 668, 670-71 (1986); Daniels, 474 U.S. at 328, 10 S. Ct. at 663; Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 291 (1976). The negligent deprivation of life, liberty or property is not a constitutional violation. See Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995); Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir. 1992), cert.

denied, 506 U.S. 973, 113 S. Ct. 462 (1992); Herrera v. Millsap, 862 F.2d 1157, 1160 (5th Cir. 1989); Simmons v. McElveen, 846 F.2d 337, 339 (5th Cir. 1988). With this analytical framework in hand, Defendant turns to his qualified immunity defense and its application to the facts of this case.

B.  THE QUALIFIED IMMUNITY DEFENSE

12. Government officials are entitled to qualified immunity from Section 1983 suits for actions performed in the exercise of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See District of Columbia v. Wesby, 138 S.Ct. 577, 589 (2018); quoting Reichle v. Howards; 566 U.S. 658, 664 (2012); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635 (1987); Mullenix v. Luna, 577 U.S.__, 136 S. Ct. 305, 308 (2015); Thompson v. Upshur Cty., Tex., 245 F.3d 447, 456 (5th Cir. 2001). The qualified immunity doctrine balances two important interests: "…the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." See Pearson v. Callahan, 555 U.S. 223 (2009). Because qualified immunity is an immunity from suit rather than a mere defense to liability, it is "…effectively lost if a case is erroneously permitted to go to trial." See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). **Importantly, as the Fifth Circuit has long recognized, if a qualified immunity case goes to trial and "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." Presley v. City of Benbrook, 4 F.3d 405, 410 (5th Cir. 1993) (noting "The Fifth Circuit pattern jury charge exemplifies how a jury would determine qualified immunity in excessive force and certain fourth amendment cases. *See* Fifth Circuit Pattern Jury Charges §§ 10.1, 10.2, 10.5 (West**

5

**1993). We do not here endorse all these charges, but simply observe that it is not impossible for a jury to be asked such questions.).[1]**

13. The qualified immunity analysis is a two-step process.[2] See Meadours v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007); Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001).

14. To apply the qualified immunity analysis, courts are to begin by defining the constitutional right and determining whether the officer's conduct, as alleged, violated that right. See Saucier v. Katz, 533 U.S. 194, 201, 207 (2001). This first examination depends on the current state of the law. See Rankin v. Klevenhagen, 5 F.3d 103, 106 (5th Cir. 1993). If the Court finds that a constitutional violation has been alleged, it moves to the second step of the analysis. Id. The Fifth Circuit has held that "the second prong of the qualified immunity test is better understood as two separate inquiries." See Hare v. City of Corinth, Miss, 135 F.3d 320, 326 (5th Cir. 1998). First, the Court must determine whether the right, as defined by the specific context of the case, was clearly established when the violation occurred. Saucier, 533 U.S. at 201. Then, the Court

---

[1] As this Circuit has ably observed:

> A district judge may determine that a factual dispute exists that precludes summary judgment, *see Reardon v. Wroan,* 811 F.2d 1025, 1030 (7th Cir.1987), or, as in this case, a defendant may fail to or *choose not to move for summary judgment.* In these instances, the policies encouraging pretrial, speedy immunity determinations—in particular, the policy favoring avoidance of the processes of litigation—do not apply, of course. *At this point, then, the trier of fact must determine the objective legal reasonableness of an officer's conduct by construing the facts in dispute.* In this case, the jury performed such a function after being instructed properly on the applicable legal standard by the trial judge. To the extent that it is possible to give separate meaning to the "clearly established" prong of the *Anderson/ Harlow* test in probable cause cases that proceed to trial, the clarity of the law is embodied in the court's charge to the jury.

Melear v. Spears, 862 F.2d 1177, 1184 (5th Cir. 1989)

[2] In Saucier v. Katz, 533 U.S 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. In Pearson, Id., the Court held that while the Saucier sequence is often appropriate, it is no longer mandatory. See Pearson, Id. at 576.

must determine whether the defendant's conduct was objectively reasonable in light of the clearly established legal standards. See Hare, Id., 135 F.3d at 326.

15. To be "clearly established", "… the contours of the right must be sufficiently clear so that every reasonable official would have understood that what he is doing violates that right." See Reichle, Id., 566 U.S. at 664 (internal quotation marks and altercation omitted). Stated another way, "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." See Wesby, Id., citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (internal quotations omitted). "In other words, existing law must have place the constitutionality of the officer's conduct beyond debate." Id., quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) and Saucier v. Katz, 533 U.S. 194, 202 (2001)("The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") The officer's actions are held to have been objectively reasonable unless all reasonable officials in the same circumstances would have recognized that the Defendants' conduct violated Plaintiff's constitutional rights. See Thompson, Id., 245 F.3d at 457 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987). If the evidence gives rise to a difference of opinion as to the lawfulness of the action among reasonably competent officers, the official is entitled to qualified immunity. See Malley v. Briggs, 475 U.S. 335, 341 (1986).

16. Plaintiff has the burden of demonstrating that Defendants are not entitled to qualified immunity. See Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015), citing Wyatt v. Fletcher, 718 F.3d 496, 502 (5th Cir. 2013). To defeat qualified immunity, Plaintiff must show that Defendants' conduct was objectively unreasonable light of clearly established law. This is a demanding standard. See Vincent, Id., 805 F.3d at 547. The protection of qualified immunity

is not to be denied by the Court unless existing precedent places the constitutional question "beyond debate". See Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011)(en banc). The Court must "ask whether the law so clearly and unambiguously prohibited [the officials'] conduct that every reasonable official would understand that what he is doing violates [the law]." Morgan, Id. citing al-Kidd, Id., 563 U.S. at 741. Once a governmental official pleads the qualified immunity defense and shows he is a governmental official whose position involves the exercise of discretion, Plaintiff then "…[has] the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." See Wyatt, Id., 718 F.3d at 502; Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997), citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992). Finally, the Fifth Circuit has held that the reasonableness of each Defendant's actions must be assessed separately. See Meadours v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007). Defendants have properly pled that at the time of the incident, they were in the course of their authority as peace officers, that they were performing a discretionary duty, and that they were acting in good faith at all times. Plaintiff is now required to overcome their entitlement to qualified immunity.

**C.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S USE OF FORCE CLAIM**

17.  Plaintiff alleges that Deputy Delgado used excessive force against him in violation of his Fourth Amendment rights. The use of excessive force in effectuating an arrest or making even a brief, Terry-type investigative detention violates the Fourth Amendment. See Graham v. Connor, 490 U.S. 385, 394-395 (1989). To establish his use of force claim, Plaintiff must establish that he experienced: (1) an injury; (2) which resulted directly and only from the use of force which was clearly excessive to the need; and (3) the excessiveness of which was clearly unreasonable. See Poole v. City of Shreveport, 691 F.3d 624, 628 (5th Cir. 2012) citing Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009), citing Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.

2007) quoting <u>Tarver v. City of Edna</u>, 410 F.3d 745, 751 (5th Cir. 2005); <u>Ikerd v. Blair</u>, 101 F.3d 430, 433-34 (5th Cir. 1996).

18. "[W]hether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" See <u>Tolan v. Cotton</u>, 572 U.S. 650, 134 S. Ct. 1861, 1865 (2014), citing <u>Graham</u>, <u>Id</u>., 490 U.S. at 396. The determination of "reasonableness" under the Fourth Amendment is "not capable of precise definition or mechanical application…[but] requires careful attention to the facts and circumstances of each particular case…". <u>Graham</u>, <u>Id</u>., 490 U.S. at 396. In <u>Graham</u>, the Supreme Court identified some of the factors which the Court should consider when determining whether the force used was reasonable. Those factors are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" <u>Graham,</u> <u>Id</u>., 490 U.S. at 396.

19. To gauge the objective reasonableness of the force used, the Court must balance "… the amount of force used against the need for force." See <u>Ramirez v. Knoulton</u>, 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citations omitted). The objective reasonableness of a particular use of force is to be determined "in light of the facts and circumstances confronting the officer …". See <u>Graham</u>, <u>Id</u>., 490 U.S. at 396.

20. The test for whether excessive force was used is an objective one. The question is whether a reasonable officer would believe that this level of force was necessary in the situation at hand. See <u>Graham</u>, <u>Id</u>., 490 U.S. at 396. The Supreme Court emphasized in <u>Graham</u>, that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Id</u>. "[F]rom the

vantage point of an officer whose life is jeopardized, a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death." See Menuel v. City of Atlanta, 25 F.3d 990, 995 (5th Cir. 1994). Further, government officials are not required to err on the side of caution. See Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 3020 (1984).

21. In this case, the Defendant had received a report from the female inside of the Plaintiff's apartment that gave rise to reasonable suspicion on Defendants' part that it was appropriate to detain Plaintiff for further investigation of the alleged offense of assault. See Terry v. Ohio, 392 U.S. 1 (1968). The evidence will establish that in order to facilitate that investigation, in full view of the circumstances, Deputy Delgado ordered and attempted to put Plaintiff's hands behind his back to be detained, and that Plaintiff failed to comply with Defendant's verbal orders. Deputy Delgado's attempts to place Plaintiff in handcuffs, was a minimal amount of force used, when compared to the scale set forth in the Use of Force Continuum by the National Institute of Justice as set forth by Defendant's testifying expert on use of force, Dr. Jay Coons. However, when this level of force failed and Cruz continued to offer resistance causing both to fall to the ground, Deputy Delgado's single strike to the Plaintiff's face effectively succeeded in allowing the deputy overcome Cruz's resistance and handcuff him.

22. *Only after* Deputy Delgado was able to detain the Plaintiff was he *first* able to interview Ms. Sheppard, the complainant, on the call. Ms. Sheppard told Deputy Delgado that she was on the couch and Mr. Cruz pulled her by the leg and hit her in the face. She said that Mr. Cruz had pushed her onto a table in the living room. *At that time*, after being able to conduct his investigation, Deputy Delgado observed the table in the living room to be undisturbed and to have a chess set on top of it. Deputy Delgado later included those facts in his written Incident Report.

23. Texas law provides, that assault with family violence can be any physical contact (grabbing, pushing, scratching, hitting, etc.) with or without bodily injury. If the contact caused pain, as the complainant had reported, it is a class A misdemeanor which is punishable by up to a year in jail and/or fines. Assault with family violence, then, is a criminal offense which the law requires that peace officers such as Defendants investigate.

D. **DEPUTY DELGADO IS ENTITLED TO SUBMIT A LEGAL QUESTION ON QUALIFIED IMMUNITY**

24. Plaintiff's "Trial Brief" request (Doc. 76) to exclude from the jury any question bearing on qualified immunity has simply no basis in the law of this Circuit or in the practice of submitting the question of reasonableness to a jury contemplating an officer's Fourth Amendment conduct in the face of an excessive force allegation at trial. Plaintiff's "Trial Brief" *itself* acknowledges this requirement -- to place the question before the jury-- in recognizing that "if the [qualified immunity] issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." (Doc. 76 at 2). As such, Plaintiff's baseless request to withhold the question of the elements of qualified immunity from the juryvwarrants denial from the Court.

25. The Fifth Circuit has long recognized that, if a qualified immunity case goes to trial and "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." Presley v. City of Benbrook, 4 F.3d 405, 410 (5th Cir. 1993). As such, Plaintiff's attempt to persuade the Court to embargo the long-accepted recognition of the jury's role in determining issues of material fact relative to the question of immunity is unfounded and impermissible.

26. Where, as here, a defendant has chosen not to move for summary judgment, "then, the trier of fact must determine the objective legal reasonableness of an officer's conduct by construing the facts in dispute." Melear v. Spears, 862 F.2d 1177, 1184 (5th Cir. 1989). (observing that "To the extent that it is possible to give separate meaning to the "clearly established" prong of the *Anderson/ Harlow* test in probable cause cases that proceed to trial, the clarity of the law is embodied in the court's charge to the jury.") Accordingly, the Plaintiff's "Trial Brief" request lacks any legal credibility and must be denied.

WHEREFORE, PREMISES CONSIDERED, Defendants Harris County Sheriff's Office Deputy Rolando Delgado in his Individual Capacity respectfully requests that this Court note his Memorandum of Law on the record of this cause, deny the Plaintiff's request for exclusion of jury instructions, and for such other and further relief to which they shall show themselves entitled.

Respectfully submitted,

/S/ *Barbara A. Callistien*
**BARBARA A. CALLISTIEN**
Senior Assistant County Attorney
Texas Bar No. 03664400
Southern District of Texas No. 9017
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5134
Facsimile: (713) 755-8924
Barbara.Callistien@cao.hctx.net

OF COUNSEL:

VINCE RYAN
HARRIS COUNTY ATTORNEY

**CELENA VINSON**
Senior Assistant County Attorney
State Bar No. 24037651
Federal Bar No. 2220428

        1019 Congress, 15th Floor
        Houston, Texas 77002
        Telephone: (713) 274-5181
        Facsimile: (713) 755-8924
        Celena.vinson@cao.hctx.net

        ATTORNEYS FOR DEFENDANT
        DEPUTY ROLANDO DELGADO JR.

### CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2019, a true and correct copy of **DEFENDANT'S MEMORANDUM OF LAW** was served by facsimile and/or electronically:

**Plaintiff's Counsel**
**SCOTT H. PALMER**
Scott H. Palmer, P.C.,
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
scott@scottpalmerlaw.com

*Counsel for Plaintiff Gilbert Cruz*

        **/S/ Barbara A. Callistien**
        BARBARA A. CALLISTIEN
        Senior Assistant County Attorney